# SUPREME COURT OF THE UNITED STATES

_____

No. 20A151

_____

RITESH TANDON, ET AL. *v.* GAVIN NEWSOM, GOVERNOR OF CALIFORNIA, ET AL.

ON APPLICATION FOR INJUNCTIVE RELIEF

[April 9, 2021]

PER CURIAM.

The application for injunctive relief presented to JUSTICE KAGAN and by her referred to the Court is granted pending disposition of the appeal in the United States Court of Appeals for the Ninth Circuit and disposition of the petition for a writ of certiorari, if such writ is timely sought. Should the petition for a writ of certiorari be denied, this order shall terminate automatically. In the event the petition for a writ of certiorari is granted, the order shall terminate upon the sending down of the judgment of this Court.

\* \* \*

The Ninth Circuit's failure to grant an injunction pending appeal was erroneous. This Court's decisions have made the following points clear.

First, government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise. *Roman Catholic Diocese of Brooklyn* v. *Cuomo*, 592 U. S. ___, ___–___ (2020) (*per curiam*) (slip op., at 3–4). It is no answer that a State treats some comparable secular businesses or other activities as poorly as or even less favorably than the religious exercise at issue. *Id.*, at ___–___ (KAVANAUGH, J., concurring) (slip op., at 2–3).

Second, whether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue. *Id.*, at ___ (*per curiam*) (slip op., at 3) (describing secular activities treated more favorably than religious worship that either "have contributed to the spread of COVID–19" or "could" have presented similar risks). Comparability is concerned with the risks various activities pose, not the reasons why people gather. *Id.*, at ___ (GORSUCH, J., concurring) (slip op., at 2).

Third, the government has the burden to establish that the challenged law satisfies strict scrutiny. To do so in this context, it must do more than assert that certain risk factors "are always present in worship, or always absent from the other secular activities" the government may allow. *South Bay United Pentecostal Church* v. *Newsom*, 592 U. S. ___, ___ (2021) (statement of GORSUCH, J.) (slip op., at 2); *id.*, at ___ (BARRETT, J., concurring) (slip op., at 1). Instead, narrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of COVID. Where the government permits other activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied. Otherwise, precautions that suffice for other activities suffice for religious exercise too. *Roman Catholic Diocese*, 592 U. S., at ___–___ (slip op., at 4–5); *South Bay*, 592 U. S., at ___ (statement of GORSUCH, J.) (slip op., at 3).

Fourth, even if the government withdraws or modifies a COVID restriction in the course of litigation, that does not necessarily moot the case. And so long as a case is not moot, litigants otherwise entitled to emergency injunctive relief remain entitled to such relief where the applicants "remain under a constant threat" that government officials will use their power to reinstate the challenged restrictions. *Roman*

*Catholic Diocese*, 592 U. S., at ___ (slip op., at 6); see also *High Plains Harvest Church* v. *Polis*, 592 U. S. ___ (2020).

These principles dictated the outcome in this case, as they did in *Gateway City Church* v. *Newsom*, 592 U. S. ___ (2021). First, California treats some comparable secular activities more favorably than at-home religious exercise, permitting hair salons, retail stores, personal care services, movie theaters, private suites at sporting events and concerts, and indoor restaurants to bring together more than three households at a time. App. to Emergency Application for Writ of Injunction 183–189. Second, the Ninth Circuit did not conclude that those activities pose a lesser risk of transmission than *applicants'* proposed religious exercise at home. The Ninth Circuit erroneously rejected these comparators simply because this Court's previous decisions involved public buildings as opposed to private buildings. *Tandon* v. *Newsom*, ___ F. 3d ___, ___, ___–___, 2021 WL 1185157, *3, *5–*6 (CA9 2021). Third, instead of requiring the State to explain why it could not safely permit at-home worshipers to gather in larger numbers while using precautions used in secular activities, the Ninth Circuit erroneously declared that such measures might not "translate readily" to the home. *Id.*, at *8. The State cannot "assume the worst when people go to worship but assume the best when people go to work." *Roberts* v. *Neace*, 958 F. 3d 409, 414 (CA6 2020) (*per curiam*). And fourth, although California officials changed the challenged policy shortly after this application was filed, the previous restrictions remain in place until April 15th, and officials with a track record of "moving the goalposts" retain authority to reinstate those heightened restrictions at any time. *South Bay*, 592 U. S., at ___ (statement of GORSUCH, J.) (slip op., at 6).

Applicants are likely to succeed on the merits of their free exercise claim; they are irreparably harmed by the loss of free exercise rights "for even minimal periods of time"; and

the State has not shown that "public health would be imperiled" by employing less restrictive measures. *Roman Catholic Diocese*, 592 U. S., at ___ (slip op., at 5). Accordingly, applicants are entitled to an injunction pending appeal.

This is the fifth time the Court has summarily rejected the Ninth Circuit's analysis of California's COVID restrictions on religious exercise. See *Harvest Rock Church* v. *Newsom*, 592 U. S. ___ (2020); *South Bay*, 592 U. S. ___; *Gish* v. *Newsom*, 592 U. S. ___ (2021); *Gateway City*, 592 U. S. ___. It is unsurprising that such litigants are entitled to relief. California's Blueprint System contains myriad exceptions and accommodations for comparable activities, thus requiring the application of strict scrutiny. And historically, strict scrutiny requires the State to further "interests of the highest order" by means "narrowly tailored in pursuit of those interests." *Church of Lukumi Babalu Aye, Inc.* v. *Hialeah*, 508 U. S. 520, 546 (1993) (internal quotation marks omitted). That standard "is not watered down"; it "really means what it says." *Ibid.* (quotation altered).

THE CHIEF JUSTICE would deny the application.

# SUPREME COURT OF THE UNITED STATES

————

No. 20A151

————

## RITESH TANDON, ET AL. *v.* GAVIN NEWSOM, GOVERNOR OF CALIFORNIA, ET AL.

### ON APPLICATION FOR INJUNCTIVE RELIEF

[April 9, 2021]

JUSTICE KAGAN, with whom JUSTICE BREYER and JUSTICE SOTOMAYOR join, dissenting.

I would deny the application largely for the reasons stated in *South Bay United Pentecostal Church* v. *Newsom*, 592 U. S. \_\_\_ (2021) (KAGAN, J., dissenting). The First Amendment requires that a State treat religious conduct as well as the State treats comparable secular conduct. Sometimes finding the right secular analogue may raise hard questions. But not today. California limits religious gatherings in homes to three households. If the State also limits all secular gatherings in homes to three households, it has complied with the First Amendment. And the State does exactly that: It has adopted a blanket restriction on at-home gatherings of all kinds, religious and secular alike. California need not, as the *per curiam* insists, treat at-home religious gatherings the same as hardware stores and hair salons—and thus unlike at-home secular gatherings, the obvious comparator here. As the *per curiam*'s reliance on separate opinions and unreasoned orders signals, the law does not require that the State equally treat apples and watermelons.

And even supposing a court should cast so expansive a comparative net, the *per curiam*'s analysis of this case defies the factual record. According to the *per curiam*, "the Ninth Circuit did not conclude that" activities like frequenting stores or salons "pose a lesser risk of transmission" than

applicants' at-home religious activities. *Ante*, at 3. But Judges Milan Smith and Bade explained for the court that those activities do pose lesser risks for at least three reasons. First, "when people gather in social settings, their interactions are likely to be longer than they would be in a commercial setting," with participants "more likely to be involved in prolonged conversations." *Tandon* v. *Newsom*, ___ F. 3d ___, ___, 2021 WL 1185157, *7 (CA9, Mar. 30, 2021). Second, "private houses are typically smaller and less ventilated than commercial establishments." *Ibid.* And third, "social distancing and mask-wearing are less likely in private settings and enforcement is more difficult." *Ibid.* These are not the mere musings of two appellate judges: The district court found each of these facts based on the uncontested testimony of California's public-health experts. *Tandon* v. *Newsom*, ___ F. Supp. 3d ___, ___, 2021 WL 411375, *30 (ND Cal., Feb. 5, 2021); see *Tandon*, ___ F. 3d, at ___, 2021 WL 1185157, *7 (noting that the applicants "do not dispute any of these findings"). No doubt this evidence is inconvenient for the *per curiam*'s preferred result. But the Court has no warrant to ignore the record in a case that (on its own view, see *ante,* at 2) turns on risk assessments.

   In ordering California to weaken its restrictions on at-home gatherings, the majority yet again "insists on treating unlike cases, not like ones, equivalently." *South Bay*, 592 U. S., at ___ (KAGAN, J., dissenting) (slip op., at 5). And it once more commands California "to ignore its experts' scientific findings," thus impairing "the State's effort to address a public health emergency." *Ibid.* Because the majority continues to disregard law and facts alike, I respectfully dissent from this latest *per curiam* decision.